**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**MELVIN REED and**
**CRYSTAL REED,**

        **Plaintiffs,**

v.                                                            **CASE NO. 07-13775**
                                                        **HONORABLE DENISE PAGE HOOD**

**FIDELITY NATIONAL INSURANCE**
**COMPANY,**

        **Defendant.**
_____/

**MEMORANDUM OPINION AND ORDER AND SCHEDULING ORDER FOR JOINT**
**FINAL PRETRIAL ORDER, FINAL PRETRIAL CONFERENCE AND TRIAL**

**I.     INTRODUCTION**

      Before the Court are (1) Plaintiffs' Motion for Partial Summary Judgment Pursuant to F.R.Civ.P. 56 Striking Defendant's Eighth Affirmative Defense and (2) Plaintiffs' Motion for Partial Summary Judgment Pursuant to F.R.Civ.P. 56 to Strike Defendant's First and Second Affirmative Defenses, both filed on June 5, 2009. Defendant filed Responses to both of Plaintiffs' Motions for Partial Summary Judgment on June 25, 2009. On July 1, 2009, Plaintiff filed a Reply to Defendant's Response to Plaintiffs' Motion for Partial Summary Judgment to Strike Defendant's First and Second Affirmative Defenses. A hearing on these matters was held on July 8, 2009.

**II.    STATEMENT OF FACTS**

      Defendant Fidelity National Insurance Company ("Fidelity") removed the instant breach of contract action from Macomb County Circuit Court, State of Michigan, on September 7, 2007,

1

pursuant to 28 U.S.C. § 1446.[1]  Fidelity issued a homeowners policy of insurance, effective March 25, 2006, to Melvin and Crystal Reed ("the Reeds") for the structure and personal property located at 53093 Pondview Drive, Utica Michigan.  On November 26, 2006, a fire destroyed the Pondview property, including the personal property located therein.  The Plaintiffs filed a claim[2] for proceeds under their policy with Fidelity, and Fidelity conducted an investigation resulting in a denial of liability under the policy's intentional acts of exclusion, as well as its fraud and concealment provision.  On September 4, 2007, Fidelity sent a denial letter to the Reeds, which stated that Fidelity denies any and all liability under the subject policy because the fire was intentionally set by the Reeds or by someone at their direction and because they engaged in fraudulent conduct relating to the insurance policy and to the claim presented under said policy.  *See* Plfs.' Mot. for Part. Summ. J., Ex. 1.

The Reeds contend that the fire was set in retaliation against Mr. Reed for testifying against a major southeast Michigan drug dealer.  Mr. Reed's testimony was given in exchange for not being prosecuted for his own involvement with illicit drug trafficking.  Mr. Reed contends that he was informed by FBI and DEA agents that there was a contract put out on his life as a result of his testimony. The Reeds assert that on the night of the fire they originally set out to only go to dinner but later decided to see a movie and then went to a family friend's house and played cards, arriving home about 2:45 a.m. to find the Pondview property on fire.  The Shelby Township Fire

---

[1] This action is between residents of different states and the amount in controversy exceeds $75,000.00.

[2] The Reeds submitted a dwelling claim, seeking proceeds in the amount of $537,000.00 and alleging a total replacement cost of the structure of $954,294.90.  The Reeds' contents claim seeks proceeds in the amount of $402,750.00 on an actual cash value basis, and $508,204.79 on a replacement cost basis.

Department's official report reflects that it received an alarm of the fire at 2:57 a.m.

On November 8, 2007, Fidelity filed a Motion for Partial Summary Judgment requesting an order declaring that Fidelity is entitled to an offset for all funds it has paid or will pay to Plaintiffs' mortgagees, against any verdict and/or judgment rendered in favor of the Reeds. On August 28, 2008, this Court denied Fidelity's Motion for Partial Summary Judgment, finding that:

> The cases Fidelity relies upon deal with situations where the defendant insurer has previously made payments to a mortgagee, and then sought an offset for the amount previously paid. Fidelity's broad request to be allowed an offset 'to the extent of any payment' is not ripe for this Court to decide at this time. Absent more concrete facts detailing the other claims pending, to whom the payments will be made and for what amount, this Court declines to issue a blanket advisory ruling allowing any sums paid to the mortgagees to qualify for an offset in this case.

*See* Aug. 28, 2008 Or., at 5. On December 10, 2008, this Court denied Fidelity's Motion to Reconsider the August 28, 2008 Order. Fidelity's Motion for Reconsideration included attachments evidencing that the Reeds' mortgagees, World Savings Bank and Michigan First Credit Union, had submitted claims to Fidelity. The Court's December 10, 2008 decision concluded that:

> The exhibits Defendant presents do not establish that Defendant has made any payments to Plaintiffs' mortgagees, only that said mortgagees have filed claims with Defendant. Nor does the affidavit, submitted by Dean Schechinger, Property Supervisor employed by Defendant, which states, "[b]ased on these claims, Fidelity is obligated to pay, and will pay a total of $454,694.33" alter this Court's conclusion. As such, the authority cited by Defendant continues to be factually dissimilar to the circumstances of the present matter.

*See* Dec. 10, 2008 Or., at 4. In response to the Reeds' present motions, Fidelity asserts that a difference in circumstances has occurred which was not present during the pendency of Fidelity's prior motions, namely that Fidelity has paid the claims of both of the mortgagees named on the

3

subject policy.³

## III. APPLICABLE LAW & ANALYSIS

### A. Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983). But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry to summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a

---

³ Fidelity has paid the following claims:

| | |
|---|---|
| World Savings Bank | $398,505.71 |
| Michigan First Credit Union | 56,188.62 |
| **TOTAL**: | **$454,694.33** |

*See* Fidelity's Br. in Opp., Exs. A and B.

4

sufficient showing on an essential element of her case with respect to which she has the burden of proof.

To create a genuine issue of material fact, the nonmovant must do more than present "some evidence" of a disputed fact. "If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Accordingly, a nonmovant "must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact." *Mathieu v. Chun*, 828 F. Supp. 495, 497 (E.D. Mich. 1993) (citations omitted).

### B. Plaintiff's Motion for Partial Summary Judgment Pursuant to F.R.Civ.P. 56 Striking Defendant's Eighth Affirmative Defense

In the present motion, the Reeds seek to strike Fidelity's Eighth Affirmative Defense, which states that:

> The Defendant claims an offset against any amount which may be deemed due to one or both of the Plaintiffs for the loss and damage sustained to the property insured under the policy, as a result of payments which have been or may be made to the Plaintiff(s) and other persons who may have an interest in such property under the terms of the policy.

*See* Def.'s Ans., at 7. The Reeds submit that there are no contractual provisions that support Fidelity's affirmative defense, specifically that Fidelity is entitled to an offset from the proceeds paid to the Reeds' mortgagees in the event that Fidelity is unsuccessful in its arson and/or fraud defenses. The Reeds further submit that the subject policy does not contain a 'standard mortgage clause' under which the obligation to pay the mortgagee named in the policy is elevated over the rights of the policyholders.

In Michigan, "[a] standard mortgage clause constitutes a separate and distinct contract between

the mortgagee and the insurance company for payment on the mortgage."[4] *Marketos v. American Employers Ins. Co.*, 240 Mich. App. 684, 692; 612 N.W. 2d 848 (2000), *rev'd in part on other grounds*, 465 Mich. 407 (2001). "[U]nder a standard mortgage clause, payment must be made to the mortgagee to the extent of its interest, and then the balance of the insurance proceeds, if any, can be sought by the mortgagor." *Id*. at 693.

The Reeds' arguments, that there is no language in the subject policy entitling Fidelity to a setoff of the proceeds paid to the Reeds' mortgagees, and that the policy does not contain a standard mortgage clause, are both without merit. The policy provision at issue in *Marketos*, where the court concluded that it was a standard mortgage clause entitling the defendant to a setoff for the amount it paid to the plaintiffs' mortgagee is similar to the policy provision at issue here. *Id.* at 695-96. Both the *Marketos'* policy and the Reeds policy state that if the insurer denies the insured's claim and pays the mortgagee, the insurer is either a) subrogated to all of the mortgagee's rights, or b) the insurer can take an assignment and transfer of the mortgage. *Id.* at 692-93 n. 4; *see also*, Def.'s Ans., Ex. A at 13. Additionally, Fidelity's policy, like the policy at issue in *Marketos*, expressly states that denial of the insured's claim will not apply to a valid claim of the mortgagee. *See* Def.'s Ans., Ex. A at 13. In *Citizens State Bank v. State Mut. Rodded Fire Ins. Co.*, 276 Mich. 62, 67; 267 N.W. 785 (1936), the court explained that:

> The so-called 'standard' or 'union' mortgage clause, making the mortgagee payee, and stipulating that the insurance shall not be invalidated by the mortgagor's acts or neglect, constitutes an independent contract between said mortgagee and insurer, and in such case the subject-matter of the insurance is the mortgagee's insurable interest[.]

---

[4] A federal court sitting in diversity applies the law of the state in which it sits. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

6

*Id.* (citing 5 Couch, Insurance Law, §1215B). The Reeds are therefore not entitled to claim the monies paid to their mortgagees by Fidelity as their policy contains a standard mortgage clause.

Further, neither the *Marketos*' policy nor the Reeds' policy contain language as to the insurer's right to a setoff. As such, the Reeds' argument that such language is necessary is incorrect. Despite the absence of language regarding a setoff, the *Marketos* court determined that "the trial court properly reduced the verdict awarding plaintiffs the full amount of the insurance policy proceeds by the amount paid to" the mortgagee. *Marketos*, 240 Mich. App. at 696-97. The plaintiffs in *Marketos* were not entitled to claim the portion of the proceeds that went to pay the mortgagee even though the jury found in their favor. *Id.* at 695. Similarly, should the jury return a verdict in the Reeds' favor, Fidelity is entitled to a setoff of the proceeds paid to the Reeds' mortgagees. Plaintiff's Motion for Partial Summary Judgment seeking to strike Fidelity's Eighth Affirmative Defense is DENIED.[5]

### C. Plaintiff's Motion for Partial Summary Judgment Pursuant to F.R.Civ.P. 56 to Strike Defendant's First and Second Affirmative Defenses

In this motion, the Reeds request that this Court strike Fidelity's first affirmative defense which asserts that the Reeds intentionally set or procured the setting of the fire on November 26, 2006, or that the fire was set by persons in privity with the Reeds or with the Reeds knowledge and consent for the purpose of obtaining insurance proceeds. The Reeds also request that this Court strike Fidelity's second affirmative defense which states that the Reeds intentionally concealed or

---

[5] As the Court concludes that the Fidelity policy contains a standard mortgage clause, it will not entertain Fidelity's alternate argument, specifically, that pursuant to Michigan statutory law, such a clause would be incorporated into Fidelity's policy. *See* MICH. COMP. LAWS § 500.2833(1)(j).

misrepresented material facts and circumstances relating to the policy of insurance and to the claims submitted by the Reeds. The Reeds assert that there exists no evidence that the Reeds set or arranged for the setting of the fire in November 2006, and due to this fact, there is likewise no genuine issue of material fact in regard to Fidelity's fraud affirmative defense. The Reeds assert that Fidelity has provided no evidence as to who set the fire, who was involved in the decision to set the fire, when the decision to set the fire was made or that anyone was paid to set the fire.

Under Michigan law, in order to succeed on its arson defense, Fidelity must prove, by a preponderance of the evidence, that the Reeds set the fire in November 2006 or caused the fire to be set. *See George v. Travelers Indemnity Co.*, 81 Mich. App. 106, 112; 265 N.W.2d 910 (1978). "[A]rson may be established by circumstantial evidence where there is evidence of motive (such as insurance together with business difficulties) and opportunity (such as access to the building), along with independent evidence of the incendiary origins of the fire." *Crossley v. Allstate Ins. Co.*, 139 Mich. App. 464, 469; 362 N.W. 2d 760 (1984) (citing *George*, 81 Mich. App. at 112)). "[S]ummary judgment is especially suspect where motive and intent are at issue or where the credibility of a witness or deponent is crucial." *Id.* at 468 (internal citations omitted).

There is no dispute that the fire was intentionally set, samples removed from various areas of the home all tested positive for gasoline. The Shelby Township firefighter who was on the scene testified at his deposition that the door leading from the back of the house to the lower level was open. *See* Def.'s Br. in Opp., Ex. I, Dep. Tr. of J. Morris, at 18. He examined the door, knob and frame, but found no damage or signs of forced entry. *Id.* Another firefighter on the scene, Terry Elsey, testified that the pedestrian door to the garage was open, as well as the door leading into the house from the garage. *Id.*, Ex. J, Dep. Tr. of T. Elsey, at 17.

8

The Reeds attempt to distinguish the *Crossley* case from the facts of the present matter. In *Crossley*, the court found that there was sufficient circumstantial evidence to submit the defendant's arson defense to the jury, reversing the trial court's decision granting partial summary judgment in favor of the plaintiff. *Id.* at 469-470. In concluding that sufficient evidence of motive and opportunity were present, the *Crossely* court relied on the following: (1) the house fire had three separate origins, all incendiary in nature; (2) the plaintiff's wife was seen leaving the garage and home just prior to the discovery of the fire; and (3) the plaintiff had recently filed for bankruptcy. *Id.* As such, the *Crossley* court determined that the trial court erred in its conclusion that there was no credible evidence of arson, and improperly weighed the credibility of the evidence. *Id.*

In the present matter, Fidelity has provided sufficient evidence of opportunity. The Reeds testified that they were the only individuals with keys to the Pondview residence, and two firefighters on the scene testified that there was no sign of forced entry, and that both the back door to the house and the pedestrian door to the garage were open. Additionally, the Reeds claim to have arrived home roughly ten minutes prior to the Shelby Township Fire Department receiving the alarm of the fire. Likewise Fidelity has provided sufficient evidence of motive, even though the Reeds contend that at the time of the fire they were up-to-date with their bills. Mr. Reed testified that he has been out of the lucrative drug trade since 2003, but provided no substantiated evidence of an alternate income.[6] Lastly, the fire was incendiary in nature with gasoline being found in multiple locations inside the Pondview residence, as well as gasoline-soaked rags stuffed into the filler pipes

---

[6] Mr. Reed testified that he received an annual income from White Racing in the amount of $90,000.00, along with earnings from drag racing. *See* Def.'s Br. in Opp., Ex. A, EUO of M. Reed at 24-26. Dan White, the owner of White Racing, testified that he has never paid Mr. Reed to work in his shop, nor given him a W2 or 1099 form. *Id.*, Ex. E, Dep. Tr. of D. White. Ms. Reed earned approximately $36,000.00 in 2006. *Id.,* Ex. F.

9

of three of the vehicles in the garage. Were this Court to rule in favor of the Reeds, it would be committing the same errors as the trial court in *Crossley.* The Reeds are not entitled to the relief they seek in regard to Fidelity's first affirmative defense as this Court cannot conclude as a matter of law that there is no genuine issue as to any material fact in regard to Fidelity's arson defense. This portion of the Reeds' Motion for Partial Summary Judgment is DENIED and Fidelity's first affirmative defense remains viable.

Similarly, it is inappropriate at this stage of the proceedings to strike Fidelity's second affirmative defense. The subject policy contains the following provision:

**Concealment or Fraud**

1. With respect to loss caused by fire, we don't provide coverage to the "insured" who has:
   a. Intentionally concealed or misrepresented any material fact or circumstance;
   b. Engaged in fraudulent conduct; or
   c. Made false statements;

   relating to this insurance.

*See* Def.'s Ans., Ex. A at 2. A violation of the above-cited language in an insurance policy will nullify an insured's right to recover based upon misrepresentations and/or concealment regarding a claim made with the intent to defraud the insurer. *See Monaghan v. Agricultural Fire Ins. Co.*, 53 Mich. 238, 254; 18 N.W. 797 (1884). "Where an insurance policy provides that an insured's concealment, misrepresentation, fraud, or false swearing voids the policy, the insured must have actually intended to defraud the insurer." *West v. Farm Bureau Mut. Ins. Co.,* 402 Mich. 67, 69; 259 N.W. 2d 566 (1977). Sufficient evidence has been presented to submit Fidelity's second affirmative defense to the jury, which may conclude that the Reeds made materially false statements or concealed material information with the intent to deceive Fidelity. While allegedly watching a

movie on the night of the fire, Mr. Reed and his daughter both testified to seeing different movies that night.[7] The jury also may infer from Mr. Reed's actions in keeping his family away from the house for a number of hours on the night of the fire suggests his desire to remain away from their home until after the fire had been set. The jury may also find that Mr. Reed misrepresented his employment at White Racing. Additionally, the jury may infer from the evidence that whoever set the fire did so, not in an attempt to kill Mr. Reed, but rather in an effort to destroy the home based on the testimony from the responding firefighters. The jury may also determine that the Reeds made false representations in regard to their testimony about their home alarm system. Mr. Reed testified that the alarm system was consistently used before it was damaged in June 2006. However, he did not get the alarm system repaired despite his claim that agents from the FBI and DEA informed him that there was a 'hit' out on his life due to his testimony against a drug dealer, who was ultimately convicted based , at least in part, on Mr. Reed's testimony. Lastly, the jury may infer that the Reeds made false statements in regard to the personal property contents claim as they have failed to provide the necessary documentation to establish their acquisition of these claimed items of personal property. As such, Fidelity is entitled to submit its fraud defense to the jury.

Lastly, Fidelity seeks its costs and attorneys' fees for having to respond to the present motion pursuant to 28 U.S.C. § 1927, which states, in relevant part:

> Any attorney . . . admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

---

[7] Mr. Reed testified that the family saw the film 'Let's Go to Prison,' while his daughter testified that the family saw 'Dream Girls,' but could not recall which theater. *See* Def.'s Br. in Opp., Ex. A at 141; Ex. G at 36.

28 U.S.C. § 1927. While the Court has the power, in its discretion, to award such costs and fees, it declines to do so at this juncture. The Reeds' conduct in bringing the present motion is not so unreasonable or vexatious as to rise to the level of filing a frivolous motion warranting an award of fees and costs.

### IV.  CONCLUSION

**Accordingly,**

IT IS ORDERED that Plaintiffs' Motion for Partial Summary Judgment Pursuant to F.R.Civ.P. 56 Striking Defendant's Eighth Affirmative Defense [**Docket No. 31, filed on June 5, 2009**] is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Partial Summary Judgment Pursuant to F.R.Civ.P. 56 to Strike Defendant's First and Second Affirmative Defenses, both filed on June 5, 2009 [**Docket No. 32, filed on June 5, 2009**] is DENIED.

IT IS FURTHER ORDERED that the Joint Final Pretrial Order is due on or before February 23, 2010.

IT IS FURTHER ORDERED that the Final Pretrial Conference is on March 2, 2010 at 2:30 p.m.

IT IS FURTHER ORDERED that trial in this matter is scheduled to begin on April 22, 2010 at 9:00 a.m.


Dated: January 27, 2010
S/Denise Page Hood
Denise Page Hood
U. S. District Judge

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 27, 2010, by electronic and/or ordinary mail.

S/William F. Lewis
Case Manager